IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SARA P. LARA,**

    Plaintiff,

vs.                                    Civ. No. 99-1023 BB/DJS

**KENNETH S. APFEL,**
**Commissioner of Social Security,**

    Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[1]

l.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits.  Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding this matter for a rehearing.  The Court will review the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings.  <u>Williams</u>

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations.  A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

1

v. Bowen, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for Supplemental Security Income (SSI) and child's insurance benefits on September 29, 1995 alleging a disability since September 20, 1995. Tr. 83, 85, 86. The application was denied initially and on reconsideration.  Plaintiff requested and received a *de novo* review before an administrative law judge (ALJ).  The ALJ found that Plaintiff was not disabled.  Tr. 36.  The Appeals Council denied Plaintiff's request for review.  Tr. 6-7. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability due to depression, seizures and post-traumatic stress disorder.  Tr. 75.  Plaintiff was born on March 8, 1978.  She graduated from high school and her only work experience is as a baby-sitter.

**Issues**

4.   Plaintiff alleges the ALJ made three errors. Specifically Plaintiff claims that: (1) the transcription of the administrative hearing is defective to the extent that appellate review is not possible; (2) the ALJ improperly substituted his opinion for the medical expert's opinions; and (3) the ALJ improperly disregarded the opinions of treating physicians and failed to properly develop evidence from the treating physician.

**The Standard of Review**

    5.    The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Id. It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld. However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

    6.    The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific types of jobs exist in significant numbers in the economy. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612

F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

7.  To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

8.  Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  These grids reflect the existence of jobs in the national economy at various residual functional levels by

4

incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984). However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids. Ray v. Bowen, 865 F.2d 222, 225

(10th Cir. 1989); Gossett v. Bowen, 862 F.2d 802, 807-08 (10th Cir. 1988); Channel, 747 F.2d at 582 n. 6.

    10.   Under the standard for evaluating child disability cases, a child under the age of 18 is entitled to disability benefits only if she has a medically determinable impairment which results in marked and severe functional limitations.  42 U.S.C. Sec. 1382(a)(3)(C).  Regulations define "marked and severe functional limitations" as meaning that the child's impairment or combination of impairments must meet, medically equal or functionally equal the severity of a listed impairment.  20 C.F.R. Sec. 416.924(d).

    11.   Plaintiff was 17 years old on September 20, 1995, the date she reported she became disabled.  Tr. 83.  The Regulations require the Commissioner to apply the childhood disability evaluation for the period she was under age 18 (September 20, 1995 through March 7, 1996) and the adult sequential evaluation process for the period after she attained age 18 (March 8, 1997 through September 29, 1997).  20 C.F.R. Sec. 416.924(e).

**Discussion**

    12.   A review of the facts demonstrates that substantial evidence does not support the ALJ's decision. On October 19, 1981, when the Plaintiff was three years old she was involved in an automobile accident.  She was ejected from the vehicle and was propelled head first in the exterior of another vehicle.  Dr. Togner, a neurology consultant describes Plaintiff's history as

having "probably febrile convulsions as an infant and at three years of age had serious head injury with right hemiparesis, which lasted somewhat long after the motor vehicle accident." Tr. 169, 184. The record shows that Plaintiff continued to have uncontrolled seizures occurring about three times a month until the age of eleven. In 1992, at age fourteen Dr. Steven M. Cobb, a psychologist diagnosed Plaintiff with depression. Plaintiff's verbal IQ is 73 and performance IQ is 94. "This significant difference is indicative of possible central nervous system impairment for organicity. This seems consistent with the history of head injury at an early age." Tr. 149.

    13.  The record shows that for a period in excess of three years from 1995 to 1997 the Plaintiff was a out-patient at the Carlsbad Mental Health Association. During this time Plaintiff received psychiatric care and psychotropic medication. On August 19, 1996, Dr. Norman Duley, a psychiatrist noted at Axis I of his diagnostic impression that Plaintiff had "major depression, recurrent, non-psychiatric but severe and difficult to treat. Axis II mixed personality disorder with passive dependent and some obsessive-compulsive features." Tr. 277. On January 20, 1997, he noted "Axis I major depression, current. Axis II 301.90 mixed personality disorder with passive, dependent and obsessive-compulsive features...Axis V current GAF 45. Past year 55." Tr. 279. A Global Assessment Functioning Scale of 45 puts Plaintiff in the category of having serious symptoms or any serious impairment

in social, occupational or school functioning. <u>Diagnostic Statistical Manual of Mental Disorders-DSM IV</u>, 1994, p. 32.

14. At the administrative hearing, Plaintiff testified that "confusion" in her mind prevented her from working. Tr. 50. When asked if she suffered from side effects from medication she said that she sleeps a lot and gets headaches. Tr. 52. The vocational expert testified that Plaintiff's inability to get up and to oversleep would preclude her from working. Tr. 76-77.

15. The record shows that Plaintiff's medication on August 5, 1997 includes Zoloft 100 mg. (an anti-depressant); Lithium 300 mg. (an anti-manic drug); Buspar ( an anti-anxiety medication) and Luvox 50mg. (an obsessive compulsive/anti-depressant medication).

*Childhood disability evaluation*

16. Plaintiff does not argue and the record does not support a finding that her impairments solely or in combination with any other impairment, meet or equal any listing. However, Plaintiff does argue that her overall functional restrictions impose the same disabling mental consequences as described in the listings. 20 C.F.R. Sec.416.926a(b). To determine if Plaintiff has a functionally equivalent impairment, the ALJ performs a functional domains analysis in five areas of development. They are:

    (a)cognitive/communicative function,

    (b) motor function,

    (c) social function,

(d) personal function, and

(e) deficiencies of concentration, persistence and pace.

17.   When discussing Plaintiff's cognitive/communicative function, the ALJ writes that the Plaintiff is average in grades and test scores.  This is not supported by the record.  Rather, the school record show that Plaintiff's final GPA was 1.58.  Tr. 457. This indicates less than a C average.  Tr. 112.  The ALJ further writes that the Plaintiff is able to "learn, understand and solve problems through intuition, verbal and nonverbal reasoning, and the application of acquired knowledge."  There is simply nothing in the record to support this statement.

18.   When discussing Plaintiff's social function, the ALJ writes that the Plaintiff "can reconcile conflicts between herself and peers or family members or other adults outside her family." Tr. 24.   Again, the record does not support this statement. Plaintiff comes from a dysfunctional family with whom she has severe problems.  Her parents are divorced.  Her father is an alcoholic. Tr. 274.  Her sister is her surrogate mother.  Id.  Her mother suffers from depression.  Id.  She has been the victim of sexual abuse by a boyfriend of her sister.  She was having a sexual relationship with a fourteen year old when she was eighteen.  Tr. 301.  Even Dr. Keilman, the Commissioner's medical consultant noted that "male members of family act in inappropr. sexual ways at...". Tr. 223.

19.   When discussing Plaintiff's personal function the ALJ

wrote that she was able to adhere to medication regimens. Tr. 24. However, the record clearly shows that at times she has been non-compliant at times. Tr. 273. When tested her Lithium and Tegretol levels were below therapeutic range. Id. Further, for months at one time her medications were dispensed daily because of fear that she would over-dose. Tr. 281, 291, 294 and 303. When asked at the hearing if she needed help taking her medication, Plaintiff did not respond and there was no follow up. Tr. 67.

*Adult disability evaluation.*

20. In discussing the B criteria analysis which is required for mental impairments, again the statements made by the ALJ in his decision are not supported by the substantial evidence in the record. When addressing the social functioning of the Plaintiff, the ALJ states that the Plaintiff" gets along well with family and friends..." Tr. 28. He goes on to say that "[until] recently, she had a boyfriend." Id. The ALJ finds that her mental impairments do not affect her social functioning. However, the record shows that she does not have a good relationship with her mother who has been absent and her father who is an alcoholic. She has received counseling on her father's drinking and how that affected her home life. Tr. 261. She feels unsafe when male members of her family are drinking. Id. She has been found to have personality traits of adult children of alcoholics. Tr. 272. She has had serious difficulties in her relationship with two of her sisters.

21.     The ALJ further erred by reason of his statement that Plaintiff's abilities as "described by Dr. Duley, are within the wide range of light work." Tr. 35.  There is no evidence in the record that Dr. Duley made any findings about the Plaintiff's ability to perform light work.

22.     The errors discussed above require a remand.  On remand the Commissioner should also consider the following:  Plaintiff argues that the ALJ should have given substantial weight to her therapist's opinion that she is disabled.  This is incorrect. A therapist is not an acceptable medical source, but rather an "other source" under the Regulations.  20 C.F.R. Sec. 416.913.  As such a therapist's opinion can be considered, and in this case should be considered, but the opinions are entitled to less weight than that accorded to the opinions of acceptable medical sources.  <u>Craig v. Chater</u>, 76 F.3d 585, 590 (4th Cir. 1996).

23.     Plaintiff argues also that this Court cannot give her case a fair appellate review because the hearing transcript has inaudible sections.  As this Court recommends a remand on other grounds, it does not have to decide if the transcript is so deficient as to warrant a remand.  On remand, a new hearing should be held to fill in the gaps on the original hearing.

**Recommended Disposition**

For these reasons, I recommend that Plaintiff's Motion to

11

Remand be granted for proceedings consistent with this opinion.

                                                   _____

**Don J. Svet**
**United States Magistrate Judge**